# United States Court of Appeals for the Federal Circuit

03-1408

V-FORMATION, INC.,

Plaintiff-Appellant,

v.

BENETTON GROUP SPA, ROLLERBLADE, INC.,
MODELL'S SPORTING GOODS CO., INC., DICK'S SPORTING GOODS, INC.,
and DUNHAM'S ATHLEISURE CORPORATION
(doing business as Dunham Sports),

Defendants-Appellees,

and

SALOMON S.A., SALOMON NORTH AMERICA INC.,
THE SPORTS AUTHORITY, INC.,
PRINCETON SKI OUTLET CORP. (doing business as Princeton Ski Shops),
and PARAGON SPORTING GOODS, INC.,

Defendants.

Richard W. Hanes, Hanes & Schutz, P.C., of Colorado Springs, Colorado, argued for plaintiff-appellant. With him on the brief was Timothy J. Schutz.

Robert J. Silverman, Fish & Richardson, P.C., of Boston, Massachusetts, argued for defendants-appellees Benetton Group SPA, et al. With him on the brief were Robert E. Hillman and Lawrence K. Kolodney.

Appealed from: United States District Court for the Southern District of New York

Senior Judge Harold Baer, Jr.

# United States Court of Appeals for the Federal Circuit

03-1408

V-FORMATION, INC.,

Plaintiff-Appellant,

v.

BENETTON GROUP SPA, ROLLERBLADE, INC.,
MODELL'S SPORTING GOODS CO., INC., DICK'S SPORTING GOODS, INC.,
and DUNHAM'S ATHLEISURE CORPORATION
(doing business as Dunham Sports),

Defendants-Appellees.

And

SALOMON S.A., SALOMON NORTH AMERICA INC.,
THE SPORTS AUTHORITY, INC.,
PRINCETON SKI OUTLET CORP. (doing business as Princeton Ski Shops),
and PARAGON SPORTING GOODS, INC.,

Defendants.

_____

DECIDED: March 15, 2005

_____

Before MAYER,[1] RADER, and PROST, Circuit Judges.

RADER, Circuit Judge.

The United States District Court for the Southern District of New York granted

summary judgment of noninfringement to Benetton Group SpA (Benetton).[2]  V-

_____

[1]     Haldane R. Mayer vacated the position of Chief Judge on December 24, 2004.

[2]     This court recognizes that V-Formation and Salomon agreed to a dismissal with prejudice of all claims and counterclaims in this action.  Thus, these issues are not addressed.

Formation, Inc. v. Benetton Group SpA, No. 01 Civ. 610 (HB), 2002 U.S. Dist. LEXIS 22394 (S.D.N.Y. Nov. 19, 2002).  The district court determined that Benetton's category three and seven skates did not infringe V-Formation, Inc.'s (V-Formation) U.S. Patent Nos. 5,803,466 (issued Sept. 8, 1998) (the '466 patent) and 6,045,143 (issued April 4, 2000) (the '143 patent).  Because the district court correctly construed the '466 patent's claim term "releasably attaching" and because no genuine issue of material fact exists regarding the toe and heel plate limitations of the '143 patent, this court affirms.

## I.

U.S. Patent No. 5,873,584 (issued February 23, 1999) (the '584 patent)[3] and the '466 and '143 patents, issued to Michael C. Wrike, all involve essentially the same technology:  an in-line roller skate having a frame made up of several separate elements, wherein the frame sidewalls (to which the wheels are mounted) are fastened to downwardly descending flanges formed from a toe plate and a heel plate.  The toe and heel plates, in turn, fasten to the bottom of a skate boot.  The patents refer to the distinct, separate, and interchangeable parts as "modular[ ]" skate construction.  '466 patent, col. 2, ll. 40-44.  The '143 patent issued from a continuation of the application that also produced the '466 patent.  Thus, the specification and drawings of both patents are the same.  Figure 5 shows a cross-sectional view of an assembled skate with the toe plate fastened to the boot by rivets and the sidewalls inserted into the cavities defined by the flanges of the toe plate.  These sidewalls attach to the flanges with bolts.

---

[3]     As discussed below, the '584 patent presents no issues in this appeal.

This appeal involves the '466 patent's requirement that releasably attaches the sidewalls to the flange pairs as well as the '143 patent's toe and heel plate limitations. Claim 1 of the '466 patent includes the "releasably attaching" language:

An in-line roller skate, comprising:

a boot having a sole surface with toe and heel portions;

a frame, comprising;

a toe plate having an upper face and a lower face, said upper face being affixed to said sole surface toe portion, and two pair of spaced apart flanges extending downwardly from said toe plate lower face, each of said flange pairs defining a cavity therebetween;

a heel plate having an upper face and a lower face, said upper face being affixed to said sole surface heel portion, and two pair of spaced apart flanges extending downwardly from said heel plate lower face, each of said flange pairs defining a cavity therebetween;

first and second downwardly extending sidewalls having front and rear upper portions, wherein said first sidewall is configured such that said rear upper portion is received into a corresponding one of said heel plate cavities and said front upper portion is received into a corresponding one of said toe plate cavities, and wherein said second sidewall is received into the other opposing said toe and heel plate cavities;

a plurality of fasteners for <u>releasably attaching</u> said first and second sidewalls to respective ones of said toe and heel plate flange pairs; and

a plurality of wheels rotatably mounted between said first and second sidewalls.

'466 patent, col. 9, ll. 1-30 (emphasis added). Claim 1 of the '143 patent includes the toe and heel plate limitations:

An in-line roller skate, comprising:

a boot having a sole surface with toe and heel portions; and

a frame, comprising:

03-1408                                              3

a <u>toe plate</u> having an upper surface affixed to said sole surface toe portion and a pair of spaced apart downwardly opening cavities, each of said toe plate cavities having an inner wall and an outer wall directly attached to a lower surface of said toe plate;

a <u>heel plate</u> having an upper surface affixed to said sole surface heel portion and a pair of spaced apart downwardly opening cavities, each of said heel plate cavities having an inner wall and an outer wall directly attached to a lower surface of said toe plate;

separate first and second downwardly extending sidewalls having front and rear upper portions, wherein said first sidewall is configured such that said rear upper portion is received into a corresponding one of said heel plate cavities and said front upper portion is received into a corresponding one of said toe plate cavities, and wherein said second sidewall is received into the other opposing said toe and heel plate cavities;

a plurality of fasteners for securing said first and second sidewalls within respective ones of said toe and heel plate cavities, each of said fasteners extending through one of said sidewalls and a cavity inner wall; and

a plurality of wheels rotatably mounted between said first and second sidewalls.

'143 patent, col. 9, ll. 1-31 (emphases added).

On January 24, 2001, V-Formation initiated an action for infringement against Benetton for infringement of the '143, '466, and '584 patents. The original and amended complaints alleged that a number of different models of Benetton's in-line roller skates infringe claims of the patents in suit.

Benetton filed a motion for summary judgment, asserting noninfringement of the '466 and '143 patents and invalidity of the '584 patent. On September 10, 2002, the district court held a <u>Markman</u> hearing (<u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 976 (Fed. Cir. 1995) (<u>en</u> <u>banc</u>), <u>aff'd</u>, 517 U.S. 370 (1996)) and oral argument on the motion for summary judgment. The district court granted Benetton's motion for summary judgment of invalidity of claims 1 and 3-11 of the '584 patent. <u>V-Formation,</u>

Inc., 2002 U.S. Dist. LEXIS 22394, at \*45. In addition, the district court granted Benetton's motion for summary judgment of noninfringement for six of seven accused skate categories. Id. at \*45-50, 60. The district court found a genuine issue of material fact about infringement of one category of Benetton's skates. Id. at 60. The district court set that issue aside for trial. V-Formation and Benetton entered into a stipulation of dismissal without prejudice as to infringement of the '143 patent by certain of Benetton's skate models. The district court dismissed those claims without prejudice. Thus, the district court entered final judgment on March 18, 2003.

## II.

This court reviews a district court's grant of a motion for summary judgment without deference. Kemco Sales Inc. v. Control Papers Co., 208 F.3d 1352, 1359 (Fed. Cir. 2000). This court also reviews claim construction without deference. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); Markman, 52 F.3d at 979. Infringement, on the other hand, either literal or by equivalents, is a question of fact. RF Del., Inc. v. Pac. Keystone Techs., Inc., 326 F.3d 1255, 1266 (Fed. Cir. 2003). Thus, a district court may determine infringement on summary judgment only "when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." Gart v. Logitech, Inc., 254 F.3d 1334, 1339 (Fed. Cir. 2001).

CLAIM CONSTRUCTION

This court must address the meaning of the claim term "releasably attaching" in claims 1 and 9 of the '466 patent. Claims 1 and 9 state: "a plurality of fasteners for releasably attaching said first and second sidewalls to respective ones of said toe and

heel plate flange pairs." '466 patent, col. 9, ll. 25-27; col. 10, ll. 16-18 (emphasis added). The district court construed the term "releasably attaching" to mean that the fasteners "must permit the sidewalls to be easily removed and replaced." <u>V-Formation, Inc.</u>, 2002 U.S. Dist. LEXIS 22394, at *24. The district court also determined that "those skilled in the art would not consider rivets . . . to fall within the category of releasable fasteners." <u>Id.</u> at *29.

The intrinsic record in a patent case is the primary tool to supply the context for interpretation of disputed claim terms. <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996). This tool usually provides the technological and temporal context to enable the court to ascertain the meaning of the claim to one of ordinary skill in the art at the time of invention. <u>Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings</u>, 370 F.3d 1354, 1360 (Fed. Cir. 2004); <u>Moba v. Diamond Automation, Inc.</u>, 325 F.3d 1306, 1315 (Fed. Cir. 2003) ("Moreover, as this court has repeatedly counseled, the best indicator of claim meaning is its usage in context as understood by one of skill in the art at the time of invention."); <u>Ferguson Beauregard v. Mega Sys., LLC</u>, 350 F.3d 1327, 1338 (Fed. Cir. 2003) ("The words used in the claims must be considered in context and are examined through the viewing glass of a person skilled in the art."); <u>Interactive Gift Express, Inc. v. Compuserve Inc.</u>, 256 F.3d 1323, 1332 (Fed. Cir. 2001) ("It is important to bear in mind that the viewing glass through which the claims are construed is that of a person skilled in the art."); <u>Markman</u>, 52 F.3d at 986 ("The focus is on the objective test of what one of ordinary skill in the art at the time of the invention would have understood the term to mean.").

In most cases, the best source for discerning this proper context is the patent specification wherein the patent applicant describes the invention. Metabolite, 370 F.3d at 1360. In this case, the '466 patent's specification informs this court that the sidewalls must be "easily" removed and replaced. The specification repeatedly emphasizes the ease of sidewall removal and replacement. For instance, the '466 patent states: "[I]f one of the sidewalls [in the invention] needs to be removed from the skate frame to be replaced, it can easily be removed without special tools or skills." '466 patent, col. 7, ll. 25-27 (emphasis added). In view of this requirement for easy replacement, the '466 patent specification further states: "[A]nother aspect of the invention is a repair kit for allowing for faster or more convenient sidewall replacement." Id. at col. 3, ll. 34-36 (emphasis added). In fact, the specification lists as one of the invention's objects that it provides an in-line skate frame with sidewalls that can be separated and singularly replaced. Id. at col. 2, ll. 39-42. Thus, the specification supports the district court's claim interpretation.

The district court properly considered other intrinsic evidence to aid its construction. For instance, the district court considered U.S. Patent No. 5,549,310 (issued August 27, 1996) (the Meibock patent). The Meibock patent is prior art that was listed as a reference on the face of the '466 patent and in an Information Disclosure Statement. This prior art reference to Meibock is not extrinsic evidence. This court has established that "prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence." Kumar v. Ovonic Battery Co., 351 F.3d 1364, 1368 (Fed. Cir. 2003); Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1371-72 n.4 (Fed. Cir. 2002); Vitronics, 90 F.3d at 1582 (Fed. Cir. 1996);

*Markman*, 52 F.3d at 979-80. For example, in <u>Arthur A. Collins, Inc. v. Northern Telecom Ltd.</u>, 216 F.3d 1042 (Fed. Cir. 2000), this court rejected the district court's claim construction, which "declined to consider the teachings of [prior art referenced in the patent] to ascertain the meaning" of the claim term "time-space-time (TST) switch." <u>Id.</u> at 1044. Instead, this court interpreted the term based on its usage in the prior art that was cited in the patent, explaining that "when prior art that sheds light on the meaning of a term is cited by the patentee, it can have particular value as a guide to the proper construction of the term, because it may indicate not only the meaning of the term to persons skilled in the art, but also that the patentee intended to adopt that meaning." <u>Id.</u> at 1045.

The district court properly used the Meibock patent to set the context for its claim construction. The Meibock patent explains that the toe and heel plates are "<u>permanently attached</u> . . . through the use of <u>rivets</u> or <u>releasably attached</u> through the use of <u>fasteners such as screws or bolts</u>." Meibock patent, col. 4, ll. 53-56 (emphases added); <u>see</u> <u>also</u> col. 5, ll. 22-25. The Meibock patent further explains: "Each fastener is shown in the preferred embodiment as a screw and retainer; however, any suitable releasable fastening device could be used. In alternative embodiments, a more permanent fastener such as a rivet could also be used." <u>Id.</u> at col. 5, ll. 54-58. Thus, the district court correctly concluded: "[The] Meibock patent provides evidence that rivets are considered by persons of ordinary skill to be permanent fasteners." <u>V-Formation, Inc.</u>, 2002 U.S. Dist. LEXIS 22394, at *28.

As the district court noted, the Meibock patent uses "strikingly similar language" to the '466 and '143 patents to describe its in-line skate construction. <u>Id.</u> For instance,

the Meibock patent recites: "[T]he frame and the base of the boot are generally integrally molded as a single piece or are permanently fastened together by riveting or bonding." Col. 1, ll. 36-40. In addition, the Meibock patent explains that the permanent rivet or bonding structures "prevent[ ] a user from adjusting the location of the frame with respect to the boot or from removing and exchanging one set of frames for another set of frames of a different configuration." Id. at col. 1, ll. 38-42. By comparison, the '466 and '143 patents state that rivets or high-strength adhesives may secure the wheel frame to the base of the boot. '466 patent, col. 5, ll. 13-16; '143 patent, col. 5, ll. 16-19. Consequently, this court agrees with the district court's conclusion that one skilled in the art would not consider rivets within the category of releasable fasteners.

Finally, the district court properly weighed this court's opinion in K-2 Corp. v. Salomon, S.A., 191 F.3d 1356 (Fed. Cir. 1999), when considering the available intrinsic evidence. The district court quoted the following portion of K-2 Corp. in footnote 1 of its opinion: "Screws, unlike rivets and laminates, are meant to be unscrewed, that is, to be removed. A rivet or a laminate, to the contrary, is meant to remain permanent, unremovable unless one is bent on breaking the permanent structure apart." V-Formation, Inc., 2002 U.S. Dist. LEXIS 22394, at *29 (quoting K-2 Corp., 191 F.3d at 1365). The district court put this reference in its proper context by explaining that "[a]lthough the K-2 case . . . is by no means controlling in the instant case, the K-2 case appears to affirm my understanding of the nature of rivets, which I derived from the intrinsic evidence . . . ." Id. Thus, the district court properly used K-2 Corp. to merely further confirm the correctness of its independent claim construction and not as controlling authority for its decision. Likewise, this court does not rely on K-2 Corp. in

reaching its conclusion regarding the trial court's claim construction. The district court properly referred to a related, non-binding judicial opinion to support its independent conclusion in this case.

In sum, this court affirms the district court's claim construction defining "releasably attaching" in claims 1 and 9 of the '466 patent to mean that the fasteners "must permit the sidewalls to be easily removed and replaced" and determining that "those skilled in the art would not consider rivets . . . to fall within the category of releasable fasteners."

INFRINGEMENT OF THE '466 PATENT

Because the frame sidewalls of the Benetton categories 3 and 7 skates are fastened with rivets, claims 1 and 9 of the '466 patent are not literally infringed. Literal infringement requires that each and every limitation set forth in a claim appear in an accused product. Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 796 (Fed. Cir. 1990). Because the rivets in the accused devices are not releasable attachments, the accused devices do not include the "releasably attaching" limitation of claims 1 and 9.

The accused skates also do not infringe claims 1 and 9 of the '466 patent under the doctrine of equivalents. Infringement under the doctrine of equivalents occurs when a claimed limitation and the accused product perform substantially the same function in substantially the same way to obtain substantially the same result. See Warner-Jenkinson Co. v. Hilton-Davis Chem. Co., 520 U.S. 17, 40 (1997). "The doctrine of equivalents cannot be used to erase 'meaningful structural and functional limitations of the claim on which the public is entitled to rely in avoiding infringement.'" Sage Prods.,

Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1424 (Fed. Cir. 1997) (quoting Conopco, Inc. v. May Dep't Stores Co., 46 F.3d 1556, 1562 (Fed. Cir. 1994)). The sidewalls of the accused skates are attached to their respective frames by a particular type of "fastener," i.e., a rivet that is not intended to be removed for replacement of broken or damaged individual sidewalls. Thus, the district court correctly surmised that rivets do not achieve substantially the same function (releasable attachment) in substantially the same way (without special tools) to achieve substantially the same result (easy, convenient, and fast replacement of sidewalls) as "releasably attached" fasteners, such as threaded bolts and screws.

INFRINGEMENT OF THE '143 PATENT

V-Formation argues that a genuine issue of material fact precludes summary judgment on the presence of toe and heel plates in Benetton's category 7 skates (also referred to as Pro 44 skates in the briefs). V-Formation perceives this dispute in the disagreement between the Polk Declaration and the Thomas Addendum. To the contrary, the record shows no disagreement about the structure of Benetton's category 7 skates. The diverging views of the two experts concern whether or not integrally molded flanges (as is the case of Benetton's category 7 skates) can satisfy the toe plate and heel plate limitations of the '143 patent. The district court properly determined that the claims (which require toe and heel plates with an upper surface affixed to the bottom portion of the skate boot) do not include the Benetton structure. Therefore, the district court correctly concluded that the Benetton category 7 skates do not infringe claims 1 and 7 of the '143 patent either literally, or under the doctrine of equivalents.

**III.**

In sum, this court affirms the district court's construction of the '466 patent's claim term "releasably attaching" and its conclusion that no genuine issue of material fact precludes summary judgment on the '143 patent. Therefore, this court affirms the district court's summary judgment of noninfringement.

COSTS

Each party shall bear its own costs.

<u>AFFIRMED</u>